IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JEAN CHALOPIN AND GREGORY PEPIN,<br><br>Plaintiffs,<br><br>v.<br><br>RENO CASIMIR AND COUGAR FALLS MANAGEMENT, LLC,<br><br>Defendants. | Case No. 4:24-cv-04040<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiffs Jean Chalopin ("Chalopin") and Gregory Pepin ("Pepin") (together, "Plaintiffs") bring this action against Defendants Reno Casimir ("Casimir") and Cougar Falls Management, LLC ("Cougar Falls") (together, "Defendants") and state as follows:

### PARTIES, JURISDICTION, AND VENUE:

1. Chalopin is an individual who is a resident and citizen of The Bahamas.

2. Pepin is an individual who is a citizen of France and a resident of the Cayman Islands.

3. Upon information and belief, Casimir is a resident of Harris County, Texas.

4. Upon information and belief, Cougar Falls is a Texas limited liability company.

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.00 and pursuant to 15 U.S.C. § 78aa(a) because Defendants have violated the Securities Exchange Act of 1934.

6. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial portion of events giving rise to the claims at issue took place in this judicial district.

7. This Court has general personal jurisdiction over Casimir as Casimir resides and maintains his domicile in Texas.

8. This Court has general personal jurisdiction over Cougar Falls as Cougar Falls is organized under Texas law and has its principal place of business in Texas.

## FACTS PERTAINING TO CHALOPIN

9. Chalopin and Casimir had a long-standing business relationship, whereby Chalopin invested significant sums of money with Casimir and Casimir's then-company, RC Global Investments Limited (the "Fund").

10. Casimir enticed Chalopin to invest money by representing that he had historically achieved high returns on investments and that Chalopin would receive significant returns on his own investments with Casimir. Casimir provided informational memoranda upon which Chalopin reasonably relied. A copy of the provided informational memoranda is attached as **Exhibit A.**

11. For a period of time, Casimir's ledgers and verbal representations to Chalopin showed meaningful returns in the Fund. However, Casimir has ultimately failed to deliver any returns or to otherwise inform Chalopin of the status, state, or results of his investment.

12. Specifically, Chalopin initially invested $3,000,000 with the Company in or about 2013. Casimir represented that the Fund consisted of $30,000,000 in investments and that Chalopin's investment earned him approximately ten percent (10%) ownership in the Fund. For the next several years, Casimir routinely put forward formal and official Fund statements, as well as oral representations, reflecting that the Fund was performing exceptionally well and that Chalopin's investment had grown significantly.

13. Over time, Casimir's statements reflected that the value of the Fund had grown from approximately $30,000,000 to over $90,000,000, and Chalopin's own investment had tripled from $3,000,000 to upwards of $9,000,000.

14. In or around 2020, Casimir called Chalopin and informed him that Casimir was selling the Fund to a company called Graham Capital Management, who agreed to buy the Fund at a one hundred percent (100%) premium to its reported value. In other words, if the Fund was then worth $90,000,000 Graham Capital had agreed to purchase it for $180,000,000. Casimir stated that he was excited about the sale and that Chalopin would make a large return on his investment because of the sale.

15. For a time, Chalopin received timely statements from the Fund; then, inexplicably, he was unable to reach Casimir or anyone else at the Fund.

16. The last statement Chalopin received regarding the Fund was on June 30, 2020. It stated that the value of his investment was $7,263,514.90. The final statement Chalopin received is attached as **Exhibit B**.

17. At the end of 2020, Chalopin inquired about the value of his investment in the Fund, but he received no response. When Chalopin contacted Casimir in early 2021, expressing confusion and concern, Casimir indicated that the person in charge of reporting to investors had left the Fund and directed Chalopin to speak with another individual. Chalopin reached out to this individual, who never responded.

18. Thereafter, Casimir represented to Chalopin that the Fund had been purchased by Graham Capital, that the year-end Fund statements should be issued by them, and that Casimir would contact Graham Capital on Chalopin's behalf and advise Chalopin of the status of his investment.

19. Thereafter, Casimir informed Chalopin that he had spoken with Graham Capital, that the Fund had performed "exceedingly well," and that Chalopin's investment had reached nearly $9,000,000 before any premium. Based upon Casimir's subsequent failure to provide information about the Fund or return Chalopin's investment, these are believed to be false statements made to keep Chalopin from taking action.

20. Thereafter, Casimir made further representations to Chalopin about Graham Capital and the Fund assets, including that Graham Capital had put the assets of the Fund and the premium in escrow due to some acquisition that required regulatory approval, and therefore the funds were tied up. Based upon Casimir's subsequent failure to provide information about the Fund or return Chalopin's investment, these are believed to be false statements made to keep Chalopin from taking action.

21. Casimir also told Chalopin that: (i) Casimir's accounts in Singapore were blocked, and that the Internal Revenue Service ("IRS") in the United States was somehow involved; (ii) Casimir had attorney fees to account for; and (iii) there was some form of settlement between Graham Capital and the Fund, under which Graham Capital would purchase the existing investments in the Fund but the pipeline of investments was instead to be sold to a separate, foreign party, where approvals could take some time. Based upon Casimir's subsequent failure to provide information about the Fund or return Chalopin's investment, these are believed to be false statements made to keep Chalopin from taking action.

22. In or around 2023, Casimir told Chalopin that all was resolved with the Fund and that Chalopin should expect to receive approximately $17,500,000 for his shares of the Fund and the pipeline, but that Casimir would need to settle with the IRS before any monies would be released. Based upon Casimir's subsequent failure to provide information about the Fund or return

Chalopin's investment, these are believed to be false statements made to keep Chalopin from taking action.

23. Months later, Casimir informed Chalopin that he had reached a settlement of $40,000,000 with the IRS and that there was a cure period before Casimir was authorized to make any disbursements. Based upon Casimir's subsequent failure to provide information about the Fund or return Chalopin's investment, these are believed to be false statements made to keep Chalopin from taking action.

24. In subsequent discussions, Casimir has been erratic – sometimes reacting angrily to questions about the Fund, sometimes acting as if everything was fine but providing no information, and often refusing to respond at all to Chalopin's outreach.

25. It has become clear to Chalopin that Casimir has been evasive and untruthful, and has acted in a highly suspicious, if not fraudulent, manner. Casimir's conduct has been consistent with the operation of a Ponzi scheme.

26. In all instances, Casimir has failed to uphold his duties to Chalopin as an investor in a "fund" that Casimir created, managed, oversaw, and/or allegedly sold.

27. On August 9, 2024, Plaintiffs' counsel sent a demand letter to Casimir, demanding that by the close of business on August 15, 2024, Casimir disburse Chalopin's reported $17,500,000 interest in the Fund, which Casimir repeatedly acknowledged, admitted, and otherwise affirmatively represented is due and owing to Chalopin. Casimir has not responded to the letter.

28. Over the course of Chalopin's and Casimir's business dealings, it became clear that Casimir was making false and misleading statements, engaging in delay tactics, and otherwise obfuscating the truth about Chalopin's investments in the Fund.

**FACTS PERTAINING TO PEPIN**

29. In late 2022, Pepin loaned $1,150,000 (the "Loan") to an entity, Cougar Falls, of which Casimir was the signatory, for Casimir to facilitate the purchase of a property. Per the terms of the agreement between Pepin and Cougar Falls, Casimir was to repay Pepin on or before March 2023.

30. In or around March 2023, Casimir began to make excuses about his or Cougar Falls' inability to repay the Loan and sought multiple extensions to repay Pepin.

31. In or around December 2023, it became clear that that Casimir/Cougar Falls would not be able to repay Pepin. Instead, Casimir and Pepin entered into a second agreement whereby Casimir/Cougar Falls would give Pepin the property purchased with Pepin's money.

32. Pepin came to learn, however, that Casimir had taken another loan against the property. Therefore, the offer to provide Pepin with the property was no longer viable. Accordingly, Casimir once again promised to Pepin that he would repay him the full $1,150,000 by April 2024 (plus interest in the amount of $1,000 per day).

33. To date, neither Casimir, nor Cougar Falls, have paid Pepin one penny of the Loan due and owing to him.

34. On August 9, 2024, Plaintiffs' counsel sent a demand letter to Casimir, demanding that by the close of business on August 15, 2024, Casimir pay Pepin $1,150,000, which represents the amount of the Loan made by Pepin to Casimir, plus interest, to be calculated based on the number of days in arrears by 5.25%. Casimir has not responded to the letter.

**COUNT ONE: SECURITIES FRAUD UNDER THE SECURITIES EXCHANGE ACT OF 1934, SECTION 10b-5**
**(Plaintiff Chalopin against Defendant Casimir)**

35. Plaintiffs incorporate the allegations of paragraphs 1 through 34 as if fully set forth herein.

36. Casimir made material misrepresentations and omissions regarding Chalopin's investment, including: (i) representing to Chalopin that his investment in the Fund would perform and did perform exceedingly well and that Chalopin's investment had nearly tripled by October 7, 2023; (ii) representing to Chalopin that he should expect to receive approximately $17,500,000 for his investment (as repeatedly said during phone calls, confirmed during a phone call on November 1, 2023, and in a subsequent conversation with Pepin); and (iii) representing to Chalopin that due to the sale of the Fund to Graham Capital, and as part of the Fund, the sale of a certain pipeline to Cannacord, Chalopin would make a large return on his investment.

37. Casimir's false statements and omissions were intended to cause, and did cause, Chalopin to invest in the Fund, to continue to hold his investment, and to refrain from filing this lawsuit at an earlier date.

38. Chalopin reasonably relied upon Casimir's false statements in order to make his investment, hold his investment and refrain from filing this lawsuit.

39. As a direct result of his decision to invest in the Fund, hold his investment, and refrain from filing this lawsuit based upon Casimir's false statements, Chalopin has lost his initial investment of $3,000,000, plus the purported gains reported by Casimir and/or the opportunity to invest the funds elsewhere.

40. Chalopin respectfully asks this Court to enter judgment against Casimir and for an exact amount to be proven at trial, but in no event less than $17,500,000, as well as exemplary damages, as provided for by law, pre-judgment and post-judgment interest, attorneys' fees, expenses, and costs of this action, and/or all other relief that this Court deems just and proper.

## COUNT TWO: BREACH OF FIDUCIARY DUTIES
### (Plaintiff Chalopin against Defendant Casimir)

41. Plaintiffs incorporate the allegations of paragraphs 1 through 34 as if fully set forth herein.

42. Casimir owed Chalopin fiduciary duties as manager of the Fund in which Chalopin invested, including the duties of prudence, diligent monitoring, loyalty, and disclosure.

43. Casimir breached his fiduciary duties to Chalopin by failing to provide Chalopin with any information about his investment despite repeated requests and by failing to return his investment.

44. As a result of these breaches, Chalopin respectfully asks this Court to enter judgment against Casimir and for an exact amount to be proven at trial, but in no event less than $17,500,000, as well as exemplary damages, as provided for by law, pre-judgment and post-judgment interest, attorneys' fees, expenses, and costs of this action, and/or all other relief that this Court deems just and proper.

## COUNT THREE: FRAUD
### (Plaintiffs Chalopin and Pepin against Defendants)

45. Plaintiffs incorporate the allegations of paragraphs 1 through 34 as if fully set forth herein.

46. In telephone discussions and in-person meetings, Casimir made various fraudulent representations to Plaintiffs, including but not limited to: (i) representing to Chalopin that his investment in the Fund would perform and did perform exceedingly well and that Chalopin's investment had nearly tripled by October 7, 2023; (ii) representing to Chalopin that he should expect to receive approximately $17,500,000 for his investment (as repeatedly said during phone calls, confirmed during a phone call on November 1, 2023, and in a subsequent conversation with

Pepin); (iii) representing to Chalopin that due to the sale of the Fund to Graham Capital, and as part of the Fund, the sale of a certain pipeline to Cannacord, Chalopin would make a large return on his investment; and (iv) representing to Pepin that Casimir, who was the signatory of Cougar Falls, would repay the Loan.

47. In furtherance of his representations to Chalopin, Casimir presented Chalopin with informational memoranda upon which Chalopin relied and historical accounts of high returns on investments. **Exhibit A**.

48. Casimir further represented to Chalopin that due to the Company's sale to Graham Capital, Chalopin would see a high return on his investment.

49. Casimir knew or should have known that his representations were false.

50. Casimir made representations to Plaintiffs with the intention that Chalopin invest $3,000,000 into the Company and that Pepin loan $1,150,000 to Casimir.

51. Casimir's misrepresentations fraudulently induced Chalopin to invest money with Casimir and induced Pepin to loan money to Cougar Falls, with Casimir as the signatory.

52. Plaintiffs reasonably and justifiably relied on Casimir's representations in pursuing their business ventures with Casimir. Chalopin would not have invested money with Casimir but for Casimir's misrepresentations regarding the potential for success and high returns on investments, and Pepin would not have loaned money to Casimir but for Casimir's misrepresentations of his ability to repay the Loan.

53. As a result of Plaintiffs' reliance on Casimir's misrepresentations, Plaintiffs have suffered actual damages: Chalopin has incurred damages of not less than $17,500,000, and Pepin has incurred damages of not less than $1,150,000.

54. Plaintiffs respectfully ask this Court to enter judgment against Defendants for an exact amount to be proven at trial, but in no event less than $18,650,000, as well as exemplary damages, as provided for by law, pre-judgment and post-judgment interest, attorneys' fees, expenses, and costs of this action, and/or all other relief that this Court deems just and proper.

### COUNT FOUR: BREACH OF CONTRACT
### (Plaintiff Chalopin against Defendant Casimir)

55. Plaintiffs incorporate the allegations of paragraphs 1 through 34 as if fully set forth herein.

56. Chalopin had a valid and enforceable contract with Casimir, under which Chalopin agreed to invest $3,000,000 with Casimir in exchange for 10% ownership in the Fund, which Casimir represented was performing exceedingly well and would generate a high return on Chalopin's investment, ultimately stating to Chalopin that he would expect to receive $17,500,000 for his investment.

57. Chalopin fully performed under the contract by investing $3,000,000 with Casimir.

58. Casimir materially breached the contract by continuously making false and fraudulent misrepresentations to Chalopin that have not been corroborated or substantiated in any way, including representing that his Company was sold to Graham Capital, which would generate a high return on Chalopin's investment, and by failing to deliver the $17,500,000 owed to Chalopin.

59. Despite repeated demands, Casimir has failed to pay Chalopin the $17,500,000 due and owing to him.

60. Chalopin respectfully asks this Court to enter judgment against Casimir for an exact amount to be proven at trial, but in no event less than $17,500,000, as well as exemplary damages,

as provided for by law, pre-judgment and post-judgment interest, attorneys' fees, expenses, and costs of this action, and/or all other relief that this Court deems just and proper.

### COUNT FIVE: BREACH OF CONTRACT
(**Plaintiff Pepin against Defendants**)

61. Plaintiffs incorporate the allegations of paragraphs 1 through 34 as if fully set forth herein.

62. Pepin had a valid and enforceable contract with Casimir, under which Pepin agreed to loan $1,150,000 to Cougar Falls, with Casimir as its signatory, for Casimir to facilitate the purchase of a property, and Casimir agreed to repay Pepin on or before March 2023.

63. Pepin performed the contract by loaning the money to Casimir. Casimir materially breached the contract by failing to repay Pepin the money on or before the due date.

64. Subsequently, Pepin entered into an agreement with Casimir under which Casimir agreed to give Pepin the property purchased with Pepin's money, in exchange for termination of Casimir's repayment obligation. However, Pepin came to learn that Casimir took a loan against the property, depleting the equity from the original loan, and making the offer to provide Pepin the property no longer viable.

65. Pepin again entered into a valid and enforceable contract with Casimir, under which Casimir again agreed to repay the full $1,150,000 by April 2024 (plus interest of $1,000 per day), in exchange for termination of Casimir's repayment obligation.

66. Despite repeated demands, Casimir has failed to pay Pepin the $1,150,000 due and owing to him. Cougar Falls has also not repaid any money to Pepin.

67. Pepin respectfully asks this Court to enter judgment against Defendants for an exact amount to be proven at trial, but in no event less than $1,150,000, as well as exemplary damages,

as provided for by law, pre-judgment and post-judgment interest, attorneys' fees, expenses, and costs of this action, and/or all other relief that this Court deems just and proper.

### COUNT SIX: PROMISSORY ESTOPPEL
### (Plaintiffs Chalopin and Pepin against Defendants)

68. Plaintiffs incorporate the allegations of paragraphs 1 through 34 as if fully set forth herein.

69. Casimir made respective promises to Plaintiffs, including promising Chalopin that his investment with the Fund was a stable investment, shown by historical accounts of high returns on investments and informational memoranda, promising Chalopin that his sale of the Company to Graham Capital would generate a high return for Chalopin, and promising Pepin to repay the Loan made to Cougar Falls.

70. Plaintiffs reasonably relied on Casimir's promises when they, respectively, invested money into his Company and loaned him money to facilitate the purchase of a property. Plaintiffs' reliance was reasonably foreseeable to Casimir, as Casimir should have expected Plaintiffs to rely on his promises, given that they had no reason to doubt Casimir or the truthfulness of his promises.

71. Plaintiffs were injured by their reliance on Casimir's promises in that Chalopin has not seen any return on his investment and Pepin has not been repaid the money that he loaned.

72. Plaintiffs respectfully ask this Court to enter judgment against Defendants for an exact amount to be proven at trial, but in no event less than $18,650,000, as well as exemplary damages, as provided for by law, pre-judgment and post-judgment interest, attorneys' fees, expenses, and costs of this action, and/or all other relief that this Court deems just and proper.

### COUNT SEVEN: UNJUST ENRICHMENT (In the Alternative)
### (Plaintiffs Chalopin and Pepin against Defendants)

73. Plaintiffs incorporate the allegations of paragraphs 1 through 34 as if fully set forth herein.

74. Defendants have unjustly benefitted from the receipt of money from Plaintiffs to their detriment.

75. Defendants, in good conscience, should not be allowed to retain the funds received from Plaintiffs.

76. As a result of Plaintiffs' reliance on Casimir's misrepresentations, Plaintiffs have suffered actual damages: Chalopin has suffered actual damages in an amount to be proven at trial, but in no event less than $17,500,000, and Pepin has suffered actual damages in an amount to be proven at trial, but in no event less than $1,150,000.

77. Plaintiffs respectfully ask this Court to enter judgment against Defendants for an exact amount to be proven at trial, but in no event less than $18,650,000, as well as exemplary damages, as provided for by law, pre-judgment and post-judgment interest, attorneys' fees, expenses, and costs of this action, and/or all other relief that this Court deems just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

A. Awarding actual damages to Plaintiffs in an amount no less than $18,650,000, plus any pre-judgment and post-judgment interest;

B. Awarding exemplary damages to Plaintiffs in an amount to be determined at trial;

C. Awarding Plaintiffs their costs and attorneys' fees pursuant to Texas Civil Practice and Remedies Code Chapter 38; and

D. For such other and further relief as this Court deems just and appropriate.

Dated: October 21, 2024

Respectfully submitted,

**VENABLE LLP**

/s/ *Nelson M. Hua*
Nelson M. Hua
Texas Bar No. 24101934
227 West Monroe St., Suite 1900
Chicago, IL 60606
(312)-820-3438
NMHua@venable.com

/s/ *Desirée F. Moore*
/s/ *Abram I. Moore*
Desirée F. Moore
Abram I. Moore
227 West Monroe St., Suite 1900
Chicago, IL 60606
(312)-820-3436
DMoore@venable.com
AMoore@venable.com
*Applications for Admission Pro Hac Vice Forthcoming*